1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| DARNELL WILLIAMS, )<br><br>              Plaintiff, )<br> )<br>     vs. )<br> )<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security )<br>Administration, )<br> )<br>              Defendant. )<br>_____ ) | Case No. EDCV 04-1419-JWJ<br><br>ORDER<br>AFFIRMING DECISION OF THE<br>ADMINISTRATIVE LAW JUDGE |

        Plaintiff seeks review of the decision of defendant, the Commissioner of

the Social Security Administration, denying his application for Supplemental

Security Income Benefits (hereinafter "SSI").  As discussed below, this Court

affirms the decision of the Administrative Law Judge.

## I.  SUMMARY OF DISTRICT COURT PROCEEDINGS

        On November 24, 2004, plaintiff Darnell Williams filed a "Complaint"

to review the decision of the Commissioner under the Social Security Act.  On

December 27, 2004, the parties consented, pursuant to 28 U.S.C. § 636(c), to

proceed before United States Magistrate Judge Jeffrey W. Johnson in the

1  instant action and to have the Magistrate Judge conduct any and all further

2  proceedings in this case and order the entry of final judgment.  On April 6,

3  2005, defendant filed an "Answer to Complaint" along with a copy of the

4  Certified Administrative Record (hereinafter "CAR") of the administrative

5  proceedings in this matter.  On September 28, 2005, the parties filed a Joint

6  Stipulation addressing their respective claims.

7      This matter is now deemed under submission and ready for decision.

8

9                    **II.  FACTUAL BACKGROUND**

10  **A.      Summary of Administrative Proceedings.**

11      On October 23, 2002, plaintiff filed an application for Social Security

12  Supplemental Security Income.  (CAR 106.)  His application was denied

13  initially and on reconsideration.  Subsequently, plaintiff sought a hearing.  A

14  hearing was held on January 29, 2004, before Administrative Law Judge John

15  W. Belcher (hereinafter "ALJ"), at which plaintiff appeared with representation

16  and testified on her own behalf.  (CAR 22-59.)  On February 27, 2004, the ALJ

17  issued an opinion denying benefits. (CAR 10-19.)

18      On October 14, 2004, the Appeals Council denied review, making the

19  decision of the ALJ the final decision of the Commissioner in this matter.

20  See 20 C.F.R. § 404.900(a)(5).

21  **B.      Facts Regarding Plaintiff's Personal History, Medical Condition,**

22          **and Treatment**.

23      Born on October 18, 1953, plaintiff was fifty years old at the time of his

24  hearing before the ALJ.  (CAR 25.)  Plaintiff has a high school equivalent

25  degree (CAR 28) and past work experience as a warehouse worker.  (CAR 29.)

26      On November 22, 2002, plaintiff underwent an Internal Medicine

27  Consultation by Jamshid Tamiry, M.D.  (CAR 146-50.)  Plaintiff's sole

28  complaint was of a "knee condition."  (CAR 146.)  Plaintiff's gait was normal

1   and he did not require an assistive aid to ambulate across the room.  (CAR

2   147.)  Dr. Tamiry reported mild crepitus in plaintiff's knees with limited range

3   of motion.  (CAR 149.)  Dr. Tamiry further reported "evidence of prominence

4   of the left proximal tibia."  (CAR 149.)  Dr. Tamiry diagnosed "probably

5   Osgood-Schlatter syndrome, Left knee with mild DJD" and "patellofemoral

6   pain syndrome, right knee."  (CAR 149.)  Dr. Tamiry concluded that plaintiff

7   was capable of lifting and carrying 50 pounds occasionly and 25 pounds

8   frequently, and standing and sitting for 6 hours.  (CAR 150.)

9       On December 10, 2002, Thu N. Do, M.D. completed a Physical

10  Residual Functional Capacity Assessment of plaintiff.  (153-62.)  Dr. Do

11  concluded that plaintiff could lift and/or carry 50 pounds occasionally and 25

12  pounds frequently, could sit and stand for 6 hours each in an eight hour day,

13  and was unlimited in her ability to push and/or pull.  (CAR 154.)  Dr. Do

14  noted that plaintiff should only occasionally climb, kneel, and crawl.  (CAR

15  155.)

16      On March 17, 2003, plaintiff presented at the emergency department of

17  the Riverside County Regional Medical Center with complaints of pain in the

18  knees and back.  (CAR 176-77.)  On April 1, 2003, plaintiff presented at the

19  urgent care department of Riverside County Regional Medical Center again

20  complaining of knee pain.  (CAR 175.)  X-rays of the right knee indicated

21  degenerative changes of the patella, Pellegrini-Stieda calcification, and slightly

22  irregular tibial tuberosity.  (CAR 180.)  X-rays of the left knee revealed

23  extensive degenerative changes of the "patella and patellar tendon and tibial

24  tuberosity," extensive calcification off medial pemoral condyle, and "probable

25  bone infarct distal femur."  (CAR 181.)  On July 3, 2003, plaintiff was again

26  evaluated at Riverside County Regional Medical Center for complaints of knee

27  pain.  (CAR 167.)

28      On July 24, 2003, plaintiff underwent a Physical Therapy Knee

1   Evaluation at Riverside County Regional Medical Center.  (CAR 165-66.)
2   Plaintiff estimated that his pain level (on an ascending scale of 1 to 10) was
3   between 6 and 8, and that he feels pain in his knees after 45 minutes of
4   activity.  (CAR 166.)  The therapist noted that plaintiff's posture was poor and
5   his gait antalgic.  (CAR 165.)  Plaintiff's knees were tender to palpation, and he
6   exhibited decreased strength and mobility.  (CAR 165.)

7   **C.**      **Plaintiff's Testimony at the Hearing Before the Administrative Law**
8           **Judge**.

9           At the hearing before the ALJ, plaintiff testified that he has a high school
10  equivalent education with past work experience as a warehouse worker.  (CAR
11  28, 29.)  Plaintiff explained that he was unable to work due to knee pain.
12  (CAR 26.)

13          Plaintiff testified that he experiences swelling and buckling of the knees,
14  but that he has never had fluid drained from his knees.  (CAR 26-27.)  Plaintiff
15  stated that he is unable to stand for long periods of time and cannot bend or
16  kneel.  (CAR 30, 31.)  He explained that he can climb stairs, but must hold a
17  handrail and walk very slowly.  (CAR 31.)  Plaintiff described a popping sound
18  in both knees and relayed that his knees are stiff in the morning.  (CAR 33.)
19  He further explained that his pain is worse when his knees are bent; he
20  estimated that he can sit for only 20 to 30 minutes before experiencing pain.
21  (CAR 33.)  Plaintiff stated that he spends three and a half to four hours a day
22  in a laying position, and can stand for only an estimated 20 to 30 minutes at a
23  time.  (CAR 34.)  Plaintiff reported that he can walk only half a block.  (CAR
24  34.)

25          Plaintiff explained that he spends most of his day watching television
26  and reading the newspaper, but that he is capable of cleaning his room and
27  doing the dishes.  (CAR 35.)  Plaintiff's stated that he only drives when it is
28  "very, very necessary" because driving causes him pain.  (CAR 35.)

1    Plaintiff stated that he had been prescribed a brace for his right knee

2    which he wore at the hearing.  (CAR 31.)  He asserted that he uses Naproxen

3    and Motrin for pain.  (CAR 32.)

4    **D.    The ALJ's Decision.**

5    On February 27, 2004, the ALJ issued a decision denying plaintiff's

6    application for supplemental security income.  (CAR 10-19.)  The ALJ

7    determined that plaintiff has severe medically determinable impairments

8    consisting of mild left knee degenerative arthritis, healed bone infarct of the

9    left femur, and evidence of Pelligini-Stieda disease.  (CAR 13.)  However, the

10   ALJ concluded that plaintiff's impairments do not meet or equal an impairment

11   listed in Appendix 1, Subpart P, Regulations No. 4.  (CAR 14.)  The ALJ also

12   found that plaintiff's subjective complaints of impairment were not credible.

13   (CAR 16.)

14   The ALJ, relying on the VE's testimony, determined that plaintiff's

15   residual functional capacity does not preclude the performance of work as a

16   bench assembler, garment sorter, and inspector/hand packager.  (CAR 17-18.)

17

18   ### III.  STANDARD OF REVIEW

19   Under 42 U.S.C. § 405 (g), a district court may review the

20   Commissioner's decision to deny benefits.  The Commissioner's  (or ALJ's)

21   findings and decision should be upheld if they are free of legal error and

22   supported by substantial evidence.  However, if the court determines that

23   findings are based on legal error or are not supported by substantial evidence in

24   the record, the court may reject the findings and set aside the decision to deny

25   benefits.  See McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002);

26   Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v.

27   Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

28   "Substantial evidence is more than a scintilla, but less than a

1    preponderance." <u>Reddick</u>, 157 F.3d 715, 720 (9th Cir. 1998).  It is "relevant

2    evidence which a reasonable person might accept as adequate to support a

3    conclusion."  <u>Id.</u>  To determine whether substantial evidence supports a

4    Commissioner's findings, the reviewing court "must review the administrative

5    record as a whole, weighing both the evidence that supports and the evidence

6    that detracts from the Commissioner's conclusion."  <u>Id.</u>  "If the evidence can

7    reasonably support either affirming or reversing," the reviewing court "may not

8    substitute its judgment" for that of the Commissioner.  <u>Reddick</u>, 157 F.3d at

9    720-721; <u>see also</u> <u>Osenbrock</u>, 240 F.3d at 1162.

10

11                        **IV.  THE FIVE-STEP ANALYSIS**

12           A disability claimant must show that a medically determinable physical

13    or mental impairment prevents the claimant from engaging in substantial

14    gainful activity and that the impairment is expected to result in death or to last

15    for a continuous period of at least twelve months.  <u>Reddick v. Chater</u>, 157 F.2d

16    at 721; 42 U.S.C. § 423 (d)(1)(A).

17           Disability claims are evaluated according to the five-step procedure

18    described below.  <u>See</u> <u>Bowen v. Yucker</u>, 482 U.S. 137, 140-42, 107 S. Ct.

19    2287, 96 L. Ed. 2d 119 (1987); <u>Reddick</u>, 157 F.3d at 721; <u>Lester v. Chater</u>, 81

20    F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996); 20 C.F.R §§

21    404.1520, 416.920.

22           **Step one:**  Is the claimant engaging in substantial gainful activity?  If so,

23    the claimant is found not disabled.  If not, proceed to step two.

24           **Step two:** Does the claimant have a "severe impairment"?  If so, proceed

25    to step three.  If not, then a finding of not disabled is appropriate.

26           **Step three:**  Does the claimant's impairment or combination of

27    impairments meet or equal an impairment in 20 C.F.R., Part 404, Subpart P,

28    Appendix 1 (hereinafter "the Listings")?  If so, the claimant is automatically

1   determined disabled.  If not, proceed to step four.

2       **Step four:**  Is the claimant capable of performing his past work?  If so,

3   the claimant is not disabled.  If not, proceed to step five.

4       **Step five:**  Does the claimant have the residual functional capacity to

5   perform any other work?  If so, the claimant is not disabled.  If not, the

6   claimant is disabled.

7   <u>Lester</u>, 81 F.3d at 828 n.5.

8       "Severe" (at step two) means any impairment or combination of

9   impairments that significantly limits the physical or mental ability to perform

10  basic work activities.  "Residual functional capacity" ("RFC") is what a

11  claimant can still do despite existing "exertional" (<u>i.e</u>, strength related) and

12  "nonexertional" limitations.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 ns.5-6

13  (9th Cir. 1989).  Nonexertional limitations restrict ability to work without

14  directly limiting strength, and include mental, sensory, postural, manipulative

15  and environmental limitations.  <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir.

16  1993); <u>Cooper</u> 800 F.2d at 1155 n.7; 20 C.F.R. §404.1569a(c).[1]

17      A claimant has the burden (through step four) of proving inability to

18  perform past relevant work.  <u>Reddick</u>, 157 F.3d at 721; <u>Drouin v. Sullivan</u>, 966

19  F.2d 1255, 1257 (9th Cir. 1992).  If this burden is met, a <u>prima</u> <u>facie</u> case of

20  disability is established and the burden shifts to the Commissioner (step five)

21  to establish that the claimant can perform alternative work.  <u>Reddick</u>, 157 F.3d

22  at 721; <u>Drouin</u>, 966 F.2d at 1257; 20 C.F.R. §§ 404.1520,  416.920.  The

23

24      [1]Nonexertional limitations include difficulty in one or more of the following:

25  functioning because of nervousness, anxiety or depression, maintaining attention or
    concentration; understanding instructions; seeing or hearing, tolerating physical features

26  of a work setting; and manipulative or postural functions (<u>e.g.</u> reaching, handling,
    stooping or crouching).  <u>See</u> 20 C.F.R. § 404.1569a(c)(1). Pain may be either an

27  exertional or nonexertional limitation. <u>Penny</u>, 2 F.3d at 959; <u>Perminter v. Heckler</u>, 765

28  F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

1  Commissioner can meet this burden by reference to the Medical-Vocational

2  Guidelines ("Grids") at 20 C.F.R. Part 404, Subpart P, Appendix 2, or by

3  relying on vocational expert ("VE") testimony.  Osenbrock v. Apfel, 240 F.3d

4  1157, 1162 (9th Cir. 2001) (citing Desrosiers v. Secretary, 846 F.2d 573, 576-

5  77 (9th Cir. 1988)).  If VE testimony is used, "the VE must identify a specific

6  job or jobs in the national economy having requirements that the claimant's

7  physical and mental abilities and vocational qualifications would satisfy."

8  Osenbrock, 240 F.3d at 1162-63.

9

10                              **V.   DISCUSSION**

11  **A.     The ALJ's Evaluation.**

12         The ALJ concluded (at step one) that plaintiff has not engaged in

13  substantial gainful activity since his alleged onset of disability.  (CAR 18.)

14  Next, the ALJ determined (at step two) that plaintiff suffers from an

15  impairment or combination of impairments considered "severe" under 20

16  C.F.R. §404.1520(b).  (CAR 18.)  At step three, the ALJ found that plaintiff's

17  impairments do not meet or medically equal one of the listed impairments in

18  Appendix 1, Subpart P Regulations No. 4.  (CAR 18.)  At step five, the ALJ

19  concluded that plaintiff is not disabled as he is capable of performing work as

20  specified by the VE.  (CAR 18.)

21         The parties have stipulated that the following issue is in dispute:

22         1.     Whether the ALJ erred in his assessment of plaintiff's credibility.

23  (Joint Stipulation, p. 2.)

24  **B.     Credibility Determination.**

25         Plaintiff argues that the ALJ improperly relied on page 2 of Exhibit 4F in

26  rejecting plaintiff's credibility.  (Joint Stipulation, p. 3.)  Specifically, the ALJ

27  wrote: "[Plaintiff] testified he is limited to standing 15-20 minutes and walk

28  one-half block.  However, I note that in April 2003, the claimant reported he

1  was able to walk one hour at a time (Exhibit 4F, page 2)." (CAR 16.)  Plaintiff
2  correctly points out that plaintiff did not make such an assertion on page 2 of
3  Exhibit 4F.  (CAR 165.)  Defendant argues that a thorough reading of the
4  record reveals that the ALJ's citation to page 2 was simply a typographical
5  error.  Defendant notes that, on page 12 of Exhibit 4F, plaintiff did allege that
6  he could walk one hour at a time.  (Joint Stipulation, p. 3.)

7          The determination of subjective testimony involves a two-step process.
8  First, the ALJ must determine if the plaintiff properly presented objective
9  medical evidence of an underlying impairment "which could reasonably be
10  expected to produce the pain or other symptoms alleged."   Bunnell v. Sullivan,
11  947 F.2d 341, 344 (9th Cir.1991) (en banc) (reaffirming Cotton v. Bowen, 799
12  F.2d 1403 (9th Cir.1986)).  If the plaintiff meets the Cotton test, and there is
13  no evidence of "malingering," then at the second step the ALJ must make
14  specific findings stating clear and convincing reasons for rejecting subjective
15  testimony.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Lester v.
16  Chater, 81 F.3d 821, 834 (9th Cir. 1995).

17          An ALJ's credibility determination should be given "great weight."
18  Cansio v. Shalala, 833 F. Supp. 764, 767 (9th Cir. 1993) (citing Nyman v.
19  Heckler, 779 F.2d 528, 531 (9th Cir. 1986)).  Furthermore, an ALJ cannot be
20  required to believe every allegation made by a plaintiff.  Fair v. Bowen, 885
21  F.2d 597, 603 (9th Cir.1989).  "An individual's statement as to pain or other
22  symptoms shall not alone be conclusive evidence of disability as defined in this
23  section; there must be medical signs and findings . . . which show the existence
24  of a medical impairment . . . which could reasonably be expected to produce
25  the pain or other symptoms alleged."  42 U.S.C. § 423(d)(5)(A); see Swenson
26  v. Sullivan, 876 F.2d 683, 687 (9th Cir.1989); Fair, 885 F.2d at 600.

27          Since plaintiff presented evidence of an impairment that could cause the
28  symptoms alleged and there was no evidence of malingering, the ALJ was

- 9 -

required to make specific findings stating clear and convincing reasons for rejecting plaintiff's subjective testimony.  See Reddick v. Chater, 157 F.3d at 722; Lester v. Chater, 81 F.3d at 834.

The ALJ cited several specific reasons for rejecting plaintiff's subjective complaints of impairment, one of which was the inconsistency in plaintiff's alleged ability to walk.  (CAR 16.)  Although plaintiff is correct in noting that page 2 of Exhibit 4F, the page cited by the ALJ for this finding, does not state that plaintiff can walk for one hour at a time, it is quite clear that the ALJ's citation was simply a typographical error.  The statement to which the ALJ refers can be found on page 12 of Exhibit 4F.  That the statement can be found within the very exhibit cited by the ALJ is evidence enough that the page number was typed in error.  Finally, the fact that an incorrect page number was cited does not detract from the fact that the ALJ's decision was supported by substantial evidence, no matter the page on which that evidence might appear.  Importantly, plaintiff's argument does not assail any of the other reasons cited by the ALJ for his credibility finding.

Thus, the ALJ properly rejected plaintiff's credibility.


**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.


DATED:  March 21, 2006

_____/s/_____
JEFFREY W. JOHNSON
United States Magistrate Judge

- 10 -